

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00136-CV

**IN THE INTEREST OF J.M.L.T.**, a Child

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2018PA00621
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:   Liza A. Rodriguez, Justice

Sitting:   Sandee Bryan Marion, Chief Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: July 31, 2019

AFFIRMED

Appellants Janece and Daniel appeal the trial court's order terminating their parental rights

to their child, J.M.L.T.[1] Both Janece and Daniel challenge the sufficiency of the evidence to

support the trial court's finding that termination is in the child's best interest. We affirm.

## Background

After J.M.L.T. tested positive for marijuana at birth in January 2018, the Texas Department

of Family and Protective Services ("the Department") removed J.M.L.T. from Janece's and

Daniel's custody and placed her with Janece's mother. Janece's mother supervised Janece's and

Daniel's visits with J.M.L.T. until March 2018, when Janece reported she and Daniel had a

---

[1] To protect the identity of the minor child, we refer to the parents by their first names and to the child by her initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

physical altercation while Janece was holding J.M.L.T. At that time, the Department removed J.M.L.T. from Janece's mother and filed a petition to terminate Janece's and Daniel's parental rights.

The trial court held a bench trial on March 4, 2019. At the time of trial, J.M.L.T. was fourteen months old. Daniel appeared with counsel and announced "ready." Janece's counsel announced "not ready" because Janece was not present. The trial court overruled the "not ready" announcement, and Janece arrived approximately one hour later, explaining that she believed the trial was scheduled for later in the day. The trial court heard testimony from the three Department caseworkers who had been involved in the case, as well as Janece and Daniel.

The Department was primarily concerned with Janece's and Daniel's routine drug use and history of domestic violence. The caseworkers testified both Janece and Daniel admitted to routine use of marijuana, including while in J.M.L.T.'s presence. Daniel also admitted to smoking a cocaine-laced cigarette while the case was pending. Both Janece and Daniel tested positive for marijuana during the pendency of the case, and both either failed to appear for or refused to submit to multiple drug tests. Janece did not "see any issue" with using marijuana and admitted she preferred using marijuana to taking her prescribed medications for various diagnosed mental illnesses.

Regarding the allegations of domestic violence, Janece told caseworkers that physical violence was "just a normal part of [her] relationship" with Daniel, and "that's how they work things out." Janece told a caseworker she and Daniel "only push each other back and forth, like a push, and then the other one will push." Janece reported a specific incident in March 2018 when she and Daniel had a physical altercation involving "some pushing and shoving" while Janece was holding J.M.L.T. The Department confirmed Janece's reports of domestic violence with Janece's mother.

During the time they worked with Family Based Services, Janece and Daniel were allowed to reside with J.M.L.T. under the supervision of Janece's mother. However, because of a violation of the safety plan, J.M.L.T. was removed and subsequently placed with her maternal great-aunt and great-uncle.

After J.M.L.T. was removed from Janece's mother, both Janece and Daniel had appropriate visits with J.M.L.T. that went well, and a caseworker testified Daniel appeared "very bonded to" J.M.L.T. Both Janece and Daniel, however, "seemed to be in denial as to the reason for CPS involvement and did not fully engage" in the recommended services. Although both Janece and Daniel engaged in some services, neither completed their service plan. The caseworker assigned at the time of trial testified she believes Janece and Daniel have not demonstrated they can meet J.M.L.T.'s emotional and physical needs now or in the future, nor has either parent demonstrated any ability to parent or to address the reasons for removal.

Janece testified she was unable to complete services because she has no family support and was homeless and "sleeping outside" for most of the time the case was pending. At the time of trial, however, Janece testified she had been employed full-time with a home health agency for one month and was living in a friend's trailer. A Department caseworker who visited the trailer reported it was cluttered, dirty, full of trash on the floor, and "stacked floor to ceiling with things that [Janece] said needed to be sold," including "four very huge truck tires in the living room." Janece, however, testified the trailer had been cleaned and organized by the time of trial. Janece also testified she was not currently using marijuana and disputed that she had ever admitted to using marijuana in J.M.L.T.'s presence. Janece stated she refused to submit to hair follicle drug tests because she did not want tufts of her hair removed.

Daniel testified that at the time of trial, he was working sixty hours per week in hospice care, auto auctions, and in a warehouse, and he was living in a house with one of his hospice

patients. Daniel testified he had not used drugs for over one month, explaining that he stopped using marijuana because it is so expensive. Daniel believes Janece is a "lovely" mother and disputes that he and Janece have a toxic relationship. Daniel also disputes that he and Janece have ever shoved or pushed each other.

At six months old, J.M.L.T. was placed with her maternal great-aunt and great-uncle, who plan to adopt her. The caseworkers reported the great-aunt and great-uncle have an appropriate, clean home where J.M.L.T. can eventually have her own room and where there is ample food and running water. The great-aunt and great-uncle ensure J.M.L.T. receives prescribed nebulizer treatments and visits the doctor regularly to address her respiratory issues. The great-aunt and great-uncle are bonded with J.M.L.T. and are meeting her medical, physical, and emotional needs. The great-aunt expressed a desire to adopt J.M.L.T. rather than share conservatorship with Janece and Daniel because Janece's and Daniel's situation is "chaotic" and inconsistent.

Following trial, the trial court granted the Department's petition for termination and terminated Janece's and Daniel's parental rights. Both Janece and Daniel appeal.

## Standard of Review

To terminate parental rights, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1), and (2) termination is in the best interests of the child. TEX. FAM. CODE ANN. §§ 161.001(b), 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In reviewing the legal sufficiency of the evidence, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). In reviewing the factual sufficiency of the evidence, we consider "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department's] allegations." *In re J.F.C.*, 96 S.W.3d 256, 267

(Tex. 2002). We are mindful that we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.*

**Discussion**

Janece and Daniel challenge the trial court's finding that termination is in the child's best interest. There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (citing TEX. FAM. CODE ANN. § 153.131(b)). In determining the best interest of a child, we apply the factors set forth in section 263.307 of the Family Code, as well as the non-exhaustive *Holley* factors. *See* TEX. FAM. CODE ANN. § 263.307; *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The *Holley* factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371–72. The factfinder may measure a parent's future conduct by his or her past conduct to determine whether termination is in the child's best interest. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

Here, while J.M.L.T. is too young to express her desires, she is bonded with her great-aunt and great-uncle, who plan to adopt her. *See In re M.C.L.*, No. 04-17-00408-CV, 2017 WL 5759376, at *3 (Tex. App.—San Antonio Nov. 29, 2017, no pet.) (mem. op.) (holding factfinder may consider whether child who is too young to express her desires has bonded with a foster family, is well cared for by them, and has spent minimal time with the biological parent in determining best interest). J.M.L.T.'s great-aunt and great-uncle have a clean and appropriate home and have

demonstrated an ability to address J.M.L.T.'s medical needs, as well as meet her physical and emotional needs generally.

In contrast, neither Janece nor Daniel demonstrated an ability to maintain a stable home for J.M.L.T. *See id.* at *4 ("Lack of stability, including a stable home, supports a finding that the parent is unable to provide for a child's emotional and physical needs.") (citation and internal quotation marks omitted). Although both Janece and Daniel testified they had secured housing and employment by the time of trial, neither maintained consistent housing or employment while the case was pending. In addition, Janece testified the home she was living in was clean and organized, but the Department caseworker visited that home and described it as cluttered, dirty, and full of trash and other items that did not belong there.

While Janece and Daniel availed themselves of some services, neither completed their service plan or provided a reasonable excuse for failing to do so. There also is evidence in the record that both Janece and Daniel used illegal drugs and engaged in physical violence with each other in J.M.L.T.'s presence. *See id.* ("A parent's tendency towards violence is relevant to a best interest determination."); *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) ("A parent's drug use . . . [and] failure to comply with his family service plan support a finding that termination is in the best interest of the child."). Both Janece and Daniel tested positive for marijuana while the case was pending and either refused or failed to appear for multiple drug tests. Daniel also admitted to using cocaine while the case was pending. While both parents testified they were not using drugs at the time of trial, neither demonstrated they understood why their drug use poses a danger to J.M.L.T. The caseworkers testified both parents admitted to using marijuana in J.M.L.T.'s presence, although Janece and Daniel disputed that testimony. The trial court was entitled to credit the caseworkers' testimony and disbelieve Janece and Daniel. *See In re J.P.B.*, 180 S.W.3d 570, 574 (Tex. 2005) (per curiam) (holding it is within the province of the

factfinder to judge a witness's demeanor and disbelieve his testimony). The trial court also was entitled to credit the caseworkers' testimony, which Daniel disputed, that Janece and Daniel routinely engaged in domestic violence, including one incident while Janece was holding J.M.L.T. *See id.*

Therefore, after considering all of the evidence in the record, we conclude the evidence is legally and factually sufficient to support the trial court's best interest finding with respect to both Janece and Daniel.

## Conclusion

Based on our review of the entire record, we conclude the evidence is legally and factually sufficient to support the trial court's best interest findings. Accordingly, we affirm the trial court's judgment.

Liza A. Rodriguez, Justice